## HARRIS ANDREWS, RESPONDENT, *v.* ABEL RICHMOND AND LUCAS SMITH, APPELLANTS.

*Contract — when it is to be regarded as a bailment and when as a sale — as to which party bears the risk of the destruction of the property by fire.*

The plaintiff delivered to the defendants, who were millers, 490 bushels of wheat, and took back the following instrument:

"Received of Harris Andrews, 490 bushels of wheat in store. The same is subject to him, or option to take price on or before the first of May next.
"RICHMOND & SMITH."

The wheat was placed in a bin containing some 200 or 300 bushels of wheat of the same kind. From this bin the defendants drew every day, on an average, 100 bushels of wheat to be ground into flour and they placed wheat in it from time to time. The mill was burned without fault on the part of the defendants on January twenty-seventh, there being then about 1,000 bushels of wheat in the bin, and at all times prior thereto there had been in the bin more wheat than was delivered by the plaintiff to the defendants. Thereafter, and before May first, the plaintiff notified the defendants that he elected to sell them his wheat at the then market price.

In an action, brought by him to recover the market price of the said wheat:

*Held*, that if the written receipt alone were considered, then the contract was one of bailment and the defendants became liable as for a conversion of the wheat when they ground it up into flour and used it.

That if, as was claimed by the defendants, the plaintiff agreed, verbally, at the time of the delivery of the wheat that it might be mixed with the defendants' own wheat and be ground into flour and used as their property, then the transaction was in law a sale and the title passed to the defendants, who became

liable to pay the market price thereof or to return other wheat of the same class and quality as the plaintiff might elect.

That in either case the plaintiff was entitled to recover the market value of the wheat.

APPEAL from a judgment in the plaintiff's favor, entered upon a verdict rendered at the Ontario Circuit, for the sum of $417.29 and from an order of the Special Term denying a new trial.

*Comstock & Bennett*, for the appellants.

*John Callister*, for the respondent.

BARKER, J.:

The action is to recover the market price of a quantity of wheat. The plaintiff, a farmer, delivered to the defendants, who are millers, 490 bushels of wheat, and they executed and delivered to him at the same time an instrument in writing which reads:

" CANANDAIGUA, *November* 14, 1878.

" Received of Harris Andrews 490 bushels of wheat in store. The same is subject to him or option to take price on or before the first of May next.

"RICHMOND & SMITH."

Before the first day of May following, the date of the instrument, the plaintiff informed the defendants that he would sell the wheat and take the market price as it ruled on that day, which was one dollar per bushel. The trial court directed the jury to render a verdict for the plaintiff for the sum of $417.29.

The evidence tended to prove that at the time the wheat was delivered it was placed in a bin containing two or three hundred bushels of wheat of the same kind and quality, of which they were the owners, and from which they were drawing every day for the purpose of grinding, and that when they received the wheat from the plaintiff they informed him that they intended to mix it with their own and manufacture it into flour. It was established on the trial that from the time of the delivery of the wheat up to the twenty-seventh day of January following, the defendants drew from this bin on an average 100 bushels per day for milling purposes, and placed therein about the same quantity. On the day last named the mill burned without any fault or negligence on the part of the defendants.

At the time of the fire there was in the bin about 1,000 bushels of wheat of the same class and quality as the wheat delivered by the plaintiff, and during all the time, and up to the time of the fire, there was more wheat in the bin than was delivered by the plaintiff to the defendants. Before the destruction of the mill the plaintiff had not demanded a return of the wheat delivered by him, nor had he elected to make a sale and take the market price. There was no dispute on the trial as to the value of the wheat at the time the plaintiff made his election.

The question presented is this, was the transaction in law a bailment of the wheat, or was it a sale of the same, so that the title passed from the plaintiff to the defendants? If the instrument in writing called a receipt expresses in full the contract under which the plaintiff delivered his wheat to the defendants, then they were bailees of the wheat and the title remained in the bailor, and the defendants were under obligations and it was their duty to re-deliver on proper demand the specific wheat to the plaintiff, unless they were relieved from such obligation by an election on the part of the plaintiff to sell them the wheat at the market price, or the same was in some manner destroyed without the fault of the bailees. There is no expression in the instrument indicating an intention on the part of the plaintiff to part with his title and make a sale of the property *in presenti.* It was stored in the defendants' mill subject to the plaintiff's own order, with an option on his part at any time before the first of May, to sell to the defendants at the then market price, and on making such election the defendants were under the implied promise to pay for the wheat. Regarding the instrument as embracing the entire contract between the parties there is no reasonable grounds for disputing the views thus far expressed. (*Goodyear* v. *Ogden*, 4 Hill, 104; *Dawson* v. *Kittle*, Id., 107.) Therefore, confining the terms of the agreement to the receipt, the consumption of the wheat before the fire was a wrongful and tortious act and the defendants are liable to the plaintiff for the value of the wheat. By the verdict he recovered that much and no more.

We are now to consider the rights of the parties. Conceding the contract or arrangement to be as the oral evidence, together with the writing, tended to prove it to be, that is, the plaintiff consented

that the wheat might be mixed with the defendants' own wheat and ground into flour, in the usual course of their business as millers, and the flour made therefrom to be their own property. Considering this to be the terms of the arrangement, then the transaction in law amounted to a sale of the wheat, and the title passed to the defendants. By an arrangement of this character, if the defendants consumed the wheat they might have redelivered the same amount of other wheat, of the same class and quality, in place of the wheat delivered by the plaintiff, should he demand a return of the wheat, and not elect to sell under the clause giving him the option.

The distinction between a sale and a bailment is well defined by all authorities. The rule laid down is this: when the identical thing is to be redelivered, in the same or in an altered form, the contract is one of bailment and the title to the property is not changed. But when, by the contract, there is no obligation to restore the specific article, and the bailee is at liberty to return another of equal value, he becomes a debtor under obligation to make a return in kind and the title to the property changes, it is a sale. I quote the remarks of Story in commenting on this class of cases: "The property passes to the borrower, it being a loan for consumption, and he being bound to restore not the same thing, but other things of the same kind. Thus if corn or wine or any other thing which is not intended to be returned back, but an equivalent in kind, is lost or destroyed by accident, it is the loss of the borrower, for it is his property and he must restore the equivalent in kind." (Story on Bailments, § 283; *Mallory* v. *Willis*, 4 Comst., 76; *Foster* v. *Pettibone*, 3 Seld., 433; *Buffum* v. *Merry*, 3 Mason, 478; *Ewing* v. *French*, 1 Blackford [Ind.], 353; *Norton* v. *Woodruff*, 2 Comst., 153; *Barker* v. *Roberts*, 8 Greenleaf, 101; *Chase* v. *Washburn*, 1 Ohio, 244; Story on Bailments, § 439.)

So which ever view the jury may have taken of the case, the defendants' liability to account for the value of the wheat at the time of the fire was established. The mere consent of the plaintiff that his wheat might be mixed with the wheat of the defendants of the same kind and quality was not inconsistent with a bailment *simpliciter*. Owners of the same kind of property and of equal value, like cereal grains or wines, may consent that they be mixed together in mass,

and each in law will retain title to his aliquot part, and may maintain replevin for his share as against a wrong-doer who acquires possession of the same. By force of this rule the owner of grain in store may sell a certain quantity of the same, less than the whole, and pass title thereto, without separating the part so sold from the whole. (Story on Bailments, § 40; 2 Blackstone's Com., 405; *Kimberly* v. *Patchin*, 19 N. Y., 334.)

On these admitted legal propositions, together with conceded facts that the loss was without the defendants' wrong or negligence, the learned counsel for the appellants bases his argument that the relation of bailor and bailee existed between the parties at the time of the loss of the wheat in the bin by fire, and the loss should be borne by the respondent. But this argument ignores other facts appearing in the case, to wit, that it was the purpose and intention of the bailees to consume the wheat by converting it into flour and selling the same as their own property, to which arrangement the bailor assented.

An agreement that the particular article which the owner places in the hands of another, may be by him consumed or sold in the course of trade, is utterly inconsistent with the principles on which the law of bailment is founded. The very term bailment implies that the owner of an article has placed it in the hands of another who is at some time to redeliver the same to the owner. If the owner consents that the person to whom he delivers the thing may consume or destroy it, it is not a bailment, whatever else the transaction may be in the law. In the case at bar there is no fair question but that all the wheat delivered was ground into flour before the fire.

We are cited to cases which are supposed to support the appellants' argument, that although the identical wheat was consumed by them, the case was one of bailment, as there was all the time other wheat in the bin equal to the amount delivered and of the same class and quality.

In the case of *Ledyard* v. *Hibbard* (48 Mich., 421), the defendants were millers, and received from the plaintiff, a farmer, wheat from his wagon and delivered to him a receipt stating that the wheat was received "at owner's risk from elements, at ten cents less Detroit quotations for same grade when sold us." This wheat, with the knowledge of the owner, was stored in a bin with the

millers' wheat, from which they drew from day to day for the purpose of their milling business. The quantity in the bins changed from day to day as it was depleted by drafts and replenished by new deposits. There was no finding in that case, nor was it claimed by the defendant that the plaintiff knew when he delivered the wheat that it was the intention of the defendant to grind the wheat into flour. It was stated as one of the facts of the case that the identical wheat deposited was ground into flour before suit brought. The action was replevin against the millers as defendants, and it appeared that a quantity of wheat of the same brand and quality as that delivered by the plaintiff was in the bin when he made demand on the defendants for the wheat. It was adjudged by the court to be a case of bailment and not one of sale.

After an examination of the opinion of that learned court we fail to find an affirmance of any rule of law hostile to the views we have expressed. The court say, that " by the receipt the grain was declared to be at the bailor's risk for the time being; it must have continued at his risk until some act was afterwards done by one party or the other to convert what at first was a bailment into a sale." The court also remarked : " It is true if the wheat is all consumed, and the amount in store is not kept good so that a demand for the wheat can be responded to, and if consumption is by the consent of the owner, *express or implied*, the consumption under such circumstances may be justly regarded as the meeting of the minds of the parties at the time of sale; but so long as the grain is kept in store from which the receipts may be met, the fair presumption is that it is intended that it shall be met, and this presumption would only be overcome by some act unequivocal in its nature."

It also appeared in the case that the defendants were warehousemen, having an elevator and were receiving grain in store from other parties on similar terms and conditions, and there was no finding that it was the intention of both parties that the grain delivered by the plaintiffs should be ground into flour and sold by the millers as their own. The case falls within the class of cases which are now so common in commercial centers ; that the owner of grain may deliver the same to a warehouseman for store with the understanding that the same will be mingled with other grain, and he receive in return grain of the same class and quality, and as

between the bailor and bailee the title does not pass, and an action of replevin may be maintained against the warehouseman and a recovery had for any grain of the same class that the warehouseman may have in his possession. The other cases cited are of this character. (*Nelson* v. *Brown*, 53 Iowa, 719; *Sexton* v. *Graham*, Id., 181.)

In the case at bar the defendants were not warehousemen, and it is not disclosed that they had similar transactions with other parties.

The evidence, which tends to show that the arrangement was in fact different from the one expressed in the receipt, must be regarded as proved by the defendants, for the plaintiff could well stand by the case made in his favor by the terms of the receipt, and the most favorable view that can be taken of the case from the evidence, in connection with the receipt, is that the plaintiff consented that the defendants might use the wheat, as they did, and replace the same with other wheat of the same kind and quality. Such an arrangement was a sale of the wheat, as we have attempted to demonstrate.

Judgment and order both affirmed, with costs.

SMITH, P. J., HAIGHT and BRADLEY, JJ., concurred.

Judgment and order affirmed.